7 U.S. 454
 3 Cranch 454
 2 L.Ed. 497
 HOPKIRK
v.
BELL.
 February Term, 1806
 
 1
 THIS was a case certified from the circuit court for the fifth circuit, and Virginia district, in chancery sitting, in which the opinions of the judges (Marshall, Ch. J. and Griffin, district judge) were opposed upon the following question:
 
 
 2
 'Whether the act of assembly of Virginia for the limitation of actions pleaded by the defendant was, under all the circumstances stated, a bar to the plaintiff's demand founded on a promissory note given on the 21st day of August, 1773?'
 
 
 3
 The certificate contained the following statement of facts agreed by the parties, viz.
 
 
 4
 That David Bell, the defendant's testator, had considerable dealings with the mercantile house of Alexander Spiers, John Bowman & Co. (of which house the plaintiff was surviving partner) in the then colony of Virginia, by their factors who resided in that colony, and on the 14th of March, 1768, gave his bond to the company for 633l. 8s. 11d. 1-2, conditioned for the payment of 316l. 14s. 5d. 3-4 on demand. That he also became farther indebted in a balance of 121l. Os. 4d. 1-2, an open account for dealings afterwards had with the company by their said factors. That on the 21st of August, 1773, Henry Bell, the defendant, made his writing, or promissory note, under his hand, attested by two witnesses, in the following words, to wit: 'I do hereby acknowledge myself to stand as security to Messrs. Alexander Spiers, John Bowman, & Co. of Glasgow, for the sum of four hundred and thirty seven pounds, fourteen shillings and ten-pence, current money of Virginia, being a debt due them by my father, David Bell. Given under my hand, this twenty-first day of August, one thousand seven hundred and seventy-three. I am not to pay the above till it is convenient.' That the said Alexander Spiers, John Bowman, & Co. were, at that time, British subjects, merchants, residents in Glasgow, in the kingdom of Great Britain, and have never been resident within the limits of the then colony, now state of Virginia, and that James Hopkirk, the surviving partner, now is, and always has been from the time of his birth, a British subject, resident in the kingdom of Great Britain, and was never within the limits of the commonwealth of Virginia. That the company had a factor or factors resident in the commonwealth of Virginia on the 21st of August, 1773, when the note was given, and from that time to the commencement of the American war, viz. on or about the first of September, 1776. That the company had neither agent or factor in this country, authorized to collect their debts, from the commencement of the war in 1776, until the year 1784. That on or about the 10th of September, 1784, and ever since, an agent has resided in this commonwealth, authorized by power of attorney, generally to collect all debts due to the company in this commonwealth.
 
 
 5
 That by the fourth article of the definitive treaty of peace, between the United States and his Britannic majesty, made on the third of September, 1782, 'it is agreed, that creditors on either side, shall meet with no lawful impediment to the recovery of the full value, in sterling money, of all bona fide debts heretofore contracted.' And by the second article of the convention between his Britannic Majesty and the United States, made on the 8th of January, 1802, 'the said fourth article,' (of the treaty of peace) 'so far as respects its future operation, is recognised, confirmed, and declared to be binding and obligatory,' 'and the same shall be accordingly observed with punctuality and good faith, and so as that the said creditors shall hereafter meet with no lawful impediment to the recovery of the full value in sterling money, of their bona fide debts.'
 
 
 6
 That by the acts of the Virginia assembly, passed on the ________ and the practice of the courts, British creditors, their agents, and factors, were prevented from suing with effect for their debts in the courts of this commonwealth, from the ____ day of April, 1774, until the year 1790—and that this suit was commenced on the 4th of Jan. 1803.
 
 
 7
 By the fourth section of the Virginia act of limitations, p. p. 107, actions upon the case on accounts are to be brought within five years after cause of action. By the twelfth section there is a saving of persons beyond seas; but by the thirteenth section it is provided, 'that all suits hereafter brought in the name or names of any person or persons residing beyond the seas, or out of this country, for the recovery of any debt due for goods actually sold and delivered here, by his or their factor or factors, shall be commenced and prosecuted within the time appointed and limited by this act for bringing the like suits, and not after, notwithstanding the saving herein before contained, to persons beyond the seas at the times their causes of action accrued.'
 
 
 8
 C. Lee, for the plaintiff. The question is, whether the act of limitations, which had once begun to run, was an impediment removed by the treaty?
 
 
 9
 This raises another question; did the treaty of peace repeal the laws of the several states which operated as legal impediments to the recovery of British debts, or was an act of each state necessary for that purpose?
 
 
 10
 It may be conceded without injury to this case, that the act of limitations began to run against this claim before the war—and that the war did not suspend its operation, but that it continued to run in the same manner as against a person who is in the country at the time the cause of action accrues, and who goes beyond seas before the limitation is complete—or against a woman who was sole when the cause of action accrued, and who married within the five years.
 
 
 11
 The plea of limitations can defeat the remedy only. The debt remains. But if the bar had been complete, yet it was forever removed by the treaty. This was a bona fide debt, contracted before the treaty—and the act of limitations is a legal impediment which it is endeavoured to oppose to its recovery. But the treaty says that the creditor shall meet with no legal impediment; and the constitution of the United States declares the treaty to be the supreme law of the land.—The act of limitations, therefore, must yield to the treaty.
 
 
 12
 In the case of Ware v. Hylton, 3 Dal. 199, this court, upon very solemn argument decided, that the treaty not only repealed all the state laws which operated as impediments, but nullified all acts done, and all rights acquired, under such laws, which tended to obstruct the creditor's right of recovery.
 
 
 13
 Similar adjudications were also made in the cases of Hamilton v. Eaton, in 1796, by Ch. J. Ellsworth and Judge Sitgreaves, in North Carolina. Page v. Pendleton, in 1793, by Chancellor Wythe, Wythe's Reports, 127; and by this court in The State of Georgia v. Brailsford, 3 Dal. 1.
 
 
 14
 The second article of the convention of 1802, between the United States and Great Britain, Laws U. S. vol. 6, Appendix 49, was produced by the difference of opinion at the board of commissioners for carrying into effect the sixth article of the treaty of 1794. The ideas of the United States, as to the effect of the treaty in removing all impediments arising from legislative acts, are expressed in the answer to Cunningham's claim, in page 51 of the printed report of the proceedings of the board.
 
 
 15
 The basis of the convention was the American construction of the sixth article of the treaty of 1794. A sum of 600,000l. sterling was stipulated to be paid by the United States for all losses under the sixth article of the treaty of 1794, and the creditors were to recover from their debtors whatever they could in the ordinary course of justice; all legislative impediments having been removed by the treaty of peace, which is recognised and confirmed by the convention.
 
 March 4.
 
 16
 The Court ordered the following opinion to be certified to the circuit court:
 
 
 17
 Upon the question, in this case referred to this court from the circuit court: it is considered by this court, that the said act of limitations is not a bar to the plaintiff's demand on the said note; and this court is of opinion, that the length of time from the giving the note to the commencement of the war, in 1775, not being sufficient to bar the demand on the said note, according to the said act of assembly, the treaty of peace between Great Britain and the United States of 1783, does not admit of adding the time previous to the war, to any time subsequent to the treaty, in order to make a bar: and is also of opinion, that the agent merely for collecting debts, mentioned and described in the said state of facts, is not to be considered as a factor within the meaning of the said act of assembly, so as to bring the case within the proviso of said act.
 
 
 18
 By this the court is not to be understood as giving an opinion on the construction of the note, as to the time of payment.