CASE 55.—CONSOLIDATED ACTIONS BY THE EQUITABLE
LIFE ASSURANCE SOCIETY OF THE UNITED
STATES AGAINST J. G. JOHNSON, AND AGAINST
JOHN G. WINN AS EXECUTOR OF C. W. HOWE,
DECEASED.—March 8, 1910.

## Johnson v. Equitable Life Assurance Society, U. S.—Winn v. Same

Appeals from Montgomery Circuit Court.

ALLIE W. YOUNG, Circuit Judge.

Judgment for plaintiff in both actions, defendants
appeal.—Reversed.

1. Limitation of Actions—Limitations Applicable to Particular
Actions—Relief on Ground of Fraud.—An action, begun in
1907 to recover money paid on insurance policies in 1900, on
the ground that the beneficiaries in the policies were guilty
of fraud in falsely representing that the insured was a debtor
of theirs, was not barred by the 10-year statute of limitations,
although the false representations were made in 1893, when
the policies were issued, since the entire transaction from
the securing of the policies to the payment of the sums due
thereon constituted the fraud, and the statute ran from the
date the payment was made, since this marked the consum-
mation of the fraud.

2. Limitation of Actions—Limitations Applicable to Particular
Actions—Relief on Ground of Fraud.—If, when a life insurance
society paid the money due on policies in 1900, they knew, or
by the exercise of ordinary care could have known, that the
beneficiaries to whom it was paid were not creditors of the
insured, as they had represented in securing the policies, their
right to recover the money paid was barred by the five-year
statute.

3. Limitation of Actions—Discovery of Fraud—Facts Putting
on Inquiry.—A letter informing an insurance society that a
party insured was in poor health and not a good risk, and that
fraud had been perpetrated in securing the insurance on his
life, was insufficient to charge the society with notice that

the beneficiaries named in the policies were not creditors of the insured as represented in securing the policies, so as to set the statute of limitations in operation against an action to recover the proceeds of the policies after payment of the same to the beneficiaries.

4.  Limitation of Actions—Discovery of Fraud—Constructive Notice—Facts Putting on Inquiry.—A statement by the administrator of one of such policy holders to the insurance society that the beneficiaries were not creditors of the insured was insufficient to charge the society with notice of the fraud, so as to set the statute in operation, where the administrator had no personal knowledge of the matter, and the insurance society had, as a part of the application for the policies, the unequivocal statements of the beneficiaries, who were looked upon as reputable business men in their community, that they were creditors of the insured.

5.  Limitation of Actions—Discovery of Fraud—What Constitutes.—A letter to the insurance society by its counsel, plainly stating that false representations had been made by the beneficiaries in such policies that the insured was a debtor of theirs, written after the death of the insured, and after the payment of the amount due on the policies, charged the company with knowledge of the fraud and started the running of the statute against such action.

6.  Limitation of Actions—Computation of Period of Limitations —Suspension by Death of Debtor.—Where a cause of action has accrued, and the statute of limitation has commenced to run, it is not suspended by the death of the debtor except by special statutory enactment.

7.  Statutes—Construction—Effect to Every Part of Statute.— In construing a statute, full effect must be given to every part, where this will not destroy the sense.

8.  Limitation of Actions—Computation of Period of Limitations —Extension of Time—Death and Administration.—In an action against an administrator appointed more than a year before the time expired for bringing the action under Ky. St. Sec. 2515, providing that an action for relief on the ground of fraud be commenced within five years after the cause of action accrued, the period of limitations was not extended by section 3847 (section 3877), providing that no suit be brought against an administrator for the first six months after his qualification, or section 2528 (section 194), providing that if the person against whom an action may be brought dies before the expiration of the time limit for commencement, and the action survives, it may be commenced against

his personal representative, devisee, or heirs after the expiration of that time and within one year after the qualification of his personal representative; these being remedial acts passed to relieve unavoidable hardships and to prevent a miscarriage of justice.

9. Limitation of Actions—Computation of Period of Limitations —Extension of Time—Death and Administration.—Ky. St. Sec. 2528, providing that where no personal representative is appointed for a decedent action may be brought against his heirs or devisees after the expiration of the time limited for bringing it and within two years after his death, applies only to cases where the death of the debtor occurs less than two years before the expiration of the time limit.

E. W. SENFF and W. B. WHITE for appellant Johnson.
R. H. WINN for appellant Winn.

JOHN A. JUDY, HUMPHREY & HUMPHREY and LEWIS APPERSON for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

On May 19, 1893, the Equitable Life Assurance Society issued a policy on the life of Morris Griffin for $9,500, payable to J. G. Johnson and C. W. Howe, jointly, and on the 24th of June, following, issued another policy for $7,000 payable to J. G. Johnson. The premiums were regularly paid upon these policies by Johnson, and Howe and Johnson, until the death of Morris Griffin in the summer of 1900. Following his death the necessary proofs of loss were made, and the society paid to Howe and Johnson in satisfaction of the first-named policy, $8,728.22, and to Johnson, the beneficiary named in the second policy, $6,533.31. The slight reduction in the face value of each policy was made because of some discrepancy in the application as to Griffin's age. In December, following, Griffin's administrator filed suit in the Lawrence circuit court against the assurance society,

wherein he sought to recover for his decedent's estate
the value of these policies, upon the theory that the
decedent was the beneficiary, and not Howe and
Johnson or Johnson. Such proceedings were had in
this litigation that, upon final judgment, the adminis-
trator failed in his contention in the lower court, and
upon appeal here the judgment was affirmed. Griffin's
Adm'r v. Equitable Assurance Society, 119 Ky. 856,
84 S. W. 1164, 27 Ky. Law Rep. 313. After the ter-
mination of this litigation in the Lawrence circuit
court, to wit, on September 30, 1905, Griffin's admin-
istrator instituted an action in the Montgomery cir-
cuit court against Howe's executor, wherein he
sought to recover of him the proceeds of the first-
named policy. In this action it is charged by Griffin's
administrator, and admitted by Howe's executor,
that neither Howe nor Johnson was creditor of Grif-
fin in any sum, and that the entire transaction was
fraudulent throughout. This action resulted in a
judgment in favor of Griffin's administrator against
Howe's executor. The case was appealed to this
court, and the judgment of the lower court reversed,
with directions to dismiss the petition. Howe's Ex-
ecutor v. Griffin's Administrator, 126 Ky. 373, 103 S.
W. 714, 31 Ky. Law Rep. 784, 128 Am. St. Rep. 296.
A similar suit was prosecuted by Griffin's adminis-
trator against Johnson upon both of the above-de-
scribed policies, and this suit lingered in the circuit
court until the opinion was rendered in the case of
Howe's executor against Griffin's administrator,
when it was dismissed. On the 24th of July, 1907,
the Equitable Life Assurance Society brought suit
in the Montgomery circuit court against J. G. John-
son, wherein it sought to recover of him the amount
of money which it had paid on both policies, subject

to credit by the premiums which had been paid there-
on.  On the 12th of October, 1907, a similar suit was
brought by the assurance society against Howe's ex-
ecutor for the full amount of the first above-named
policy, subject to credit by the premiums which had
been paid thereon.  These two cases were, on motion,
consolidated and heard together.  The trial court
held, upon final submission, that Johnson and Howe's
executor were liable for the proceeds of the first
policy, subject to a credit for the premiums paid,
and that Johnson was liable for the proceeds of the
second policy, subject to a credit for the premiums
paid on it, and this appeal is prosecuted from that
judgment.

Separate defenses are interposed by Johnson and
Howe's executor, and, while in the main they are sim-
ilar, there are certain defenses set up by Howe's ex-
ecutor which are not made by Johnson.  Johnson re-
lied in the lower court, in the main, upon the five and
ten year statutes of limitation.  These defenses were
made by Howe's executor, and, in addition, he plead-
ed that the affidavits filed in support of the claim were
insufficient, and that the suit should be dismissed be-
cause the claim was not supported by proper affi-
davits when demand was made of the executor.  Sev-
eral other defenses were made which it is not deemed
necessary to set out at length.  It will be necessary,
in considering the cases on appeal, to treat them sep-
arately.  We will first dispose of the Johnson case.

Plaintiff seeks to recover here money which it paid
to Johnson by mistake, believing at the time it did
so that Johnson was a bona fide creditor of Morris
Griffin, deceased.  The defense interposed by Johnson
is that, even conceding that it be true that Johnson
was not a creditor of Griffin, and that he was not en-

titled to receive the proceeds of the second policy or any portion of the proceeds of the first policy, still plaintiff should not be permitted to recover because he has not brought his suit within five years of the date of the discovery of the fraud perpetrated and subsequent mistake made by it, or within ten years of the date of the perpetration of the fraud. The policies were issued in 1893. The representations were then made to the assurance society that Johnson was a creditor of Griffin, and upon the faith of these statements one of said policies was issued to Howe and Johnson as the beneficiaries, and the other to Johnson alone as the beneficiary. It is urged that this is the fraud, and the only fraud, which was perpetrated, and that, as this occurred in 1893, plaintiff's right to recover is clearly barred when the action was not brought until after the lapse of ten years.

To this view we cannot agree, for, while it is true that the representations as to the indebtedness of Griffin to Johnson were made in 1893, nothing was paid on the policy until the summer of 1900. The machinery by or through which the fraud was to be perpetrated was set in motion in 1893; but the actual fraud was not perpetrated until, by reason of those statements and representations made in 1893, the society was induced to and did part with its money in the summer of 1900. Every act that was done, every statement that was made, and every step that was taken between the signing of the application and the representations made therein in 1893, down to the time when the proofs of loss were made out and filed with the society, were but links in the chain which constitute the fraud which was perpetrated upon the society. The procuring of the policies does not con-

stitute the fraud, for by their issuance no harm was done, no loss was sustained, and no one was injured: It is only when the money is paid thereon that the fraudulent intent is consummated. Hence, in determining whether or not the right of recovery is barred by the statute of limitations, we must reckon, not from the date of the issuing of the policy or of paying the premiums thereon, but from the date the money thereon was procured, for this, as above stated, was the consummation of the fraud. Clearly, then, as this litigation was commenced in July, 1907, the ten-year statute has no application.

Does the five-year statute apply? Of course, if, at the time this money was paid over in settlement and adjustment of these policies in the summer of 1900 by the assurance society, it knew, or by the exercise of ordinary care could have known, that Howe and Johnson and Johnson were not creditors of Griffin, and that they had no insurable interest in his life, and yet, in the possession of this knowledge, paid over the money in question, their right to recover would be barred. But it is urged for the society it did not know these facts and was not in a position where, by the exercise of ordinary diligence, it could have known that Johnson was not justly entitled to the money to which he was laying claim. For Johnson it is urged that the society, by the exercise of any care, must have known as early as 1895 that the transaction was fraudulent, and, to support this contention, a letter written by Messrs. Tyler and Apperson is relied upon. This letter is as follows:

"Mt. Sterling, Ky., October 2, 1895. The Equitable Assurance Association, New York, N. Y.—Gentlemen: Some time since we wrote you concerning one of your risks in this county, to wit, Morris Griffin,

and you finally replied that you had investigated the matter and found the risk satisfactory. At the time we first wrote you we had been employed to investigate a loss of the Massachusetts Life Insurance Co., the policies covering which had been secured through the same parties that the insurance on the life of Griffin was taken out, and in the investigation of that loss we have discovered indisputable evidence of the fraud practiced upon you by some of the same parties engaged in procuring the policies that we have been investigating, and the fraud is so evident that upon very slight investigation by a qualified person that it would be impossible for them to arrive at any other conclusion than that the risk taken by you was not an insurable one at the time you wrote it and never has been since. We inclose you a letter or statement of Dr. J. B. Taulbee, one of our most reputable citizens, which not only shows that he was well acquainted with Griffin's condition from what other persons said, but from actual examination made about the time your policies were issued. We also inclose you a statement of Dr. Cox, who was Griffin's family physician, which sustains Dr. Taulbee in his opinion of the risk. Dr. W. R. Thompson, another physician, of unquestionable integrity attended said Griffin in July, 1893, and he will state that said Griffin then had heart trouble which was organic at the time and cannot be relieved, and that one of the parties who is now interested in the policy on Griffin's life made an engagement with him to examine said Griffin and got his opinion as to how long Griffin would live, but never brought Griffin to his office to have him examined.

Dr. C. B. Duerson, whose standing and integrity is equal to that of any one in this community, says that Griffin came to him in 1892 or 1893 and told him if

he would examine him and pass him for insurance that one of the parties, whose name we can give you, and who is now interested in a policy issued by you, that there would be money in it for them both, that Duerson indignantly refused the offer and ordered him out of his office, and but for this, Griffin's physical condition, would probably have given him reason to leave abruptly. The parties interested in the policies have recently learned that in the investigation of the other matter in our hands that we had learned something more in regard to Griffin in order to prevent us or any one else from interrogating Griffin and learning anything from him have removed him to a distant part of the state and from what we hear you may expect notice of a death loss at any time.

In order that you may thoroughly understand the case and learn the true condition of your risk and the manner in which it was produced and is now held, we would suggest that you send a competent person who will consult with Dr. Taulbee and make such investigation of it as he may suggest, or you might write Dr. Taulbee for any further knowledge he has, not only as to the risk, but the parties who now hold the policies, but we would suggest that your inquiries come from the home office and not through Louisville. We write this in view of our former correspondence, believing that it would be right that you should know it, and ask you to write the Massachusetts Mutual Life Insurance Co. at Springfield, Mass., as to what they have learned regarding the parties interested in their loss here, some of whom are the same parties in the Griffin policy.    Very respectfully,

"Tyler & Apperson."

It will be observed that the tenor and purport of this letter is to the effect that Griffin was not a good

risk, and that a fraud had been practiced upon the society in procuring the insurance upon his life; but there is not intimation in this letter that would lead one to question the statement that Johnson or Howe and Johnson was a creditor of Griffin. On the contrary, its evident purpose was to acquaint the society with the fact that Griffin was a man in poor health, not a suitable subject to be insured, and winds up with an insinuation or covert charge that certain of those who had been supposed to be representing the society and looking after its interests had been recreant to their trust in permitting this insurance to be written. This letter was written in 1895. The policies had been written and paid for in the summer of 1893. The application, medical examination, and the expert information relative thereto were all on file in the society's office. It was satisfied with the risk and did not give to the letter in question as much consideration as subsequent developments showed it was entitled to receive. But we cannot say that this letter, even when critically analyzed, would be calculated to put one upon notice that the beneficiaries named in the policies were not in fact creditors of Griffin; and this is the foundation upon which the fraudulent scheme to procure this money from the society was built.

It is next urged, by counsel for Johnson, that, even though this letter should not be regarded as sufficient to have placed the society upon notice, the position taken by the administrator of Griffin prior to the institution of the suit in the Lawrence circuit court, in December, 1900, was amply sufficient to have put the society upon notice. But an examination of all of the correspondence that passed between Griffin's administrator and the society does not justify the

claim that it was sufficient to put the society upon notice that Johnson was not a creditor of Griffin. It is true that the administrator asserted that he was not, but, as opposed to this declaration of the representative of Griffin, who had no personal knowledge about the matter, the society had the application for the insurance, signed by Griffin himself, in which he unequivocally stated that Johnson was his creditor. This statement by the insured was supplemented by the statements of both Howe and Johnson, and, while it is true that these latter turned out to be false and fraudulent in every particular, still we must treat and look at them from the view point in which the parties then stood, and, at that time both Johnson and Howe being looked upon as reputable business men in their community, we are of opinion that the society was warranted in accepting the sworn statements of Howe and Johnson, when taken in connection with the statement of Griffin himself, that they were his creditors, and in rejecting the claim of the administrator that they were not his creditors.

It is next urged by counsel for appellant that, even though the Tyler & Apperson letter and the administrator's correspondence were not sufficient to put the society upon notice which would call for an investigation, a letter written by Judge Burnett, its lawyer, especially employed to represent it in the Lawrence county litigation, placed before the society a state of facts which clearly showed that the whole transaction from beginning to end had been a fraudulent scheme on the part of Howe and Johnson to procure the insurance on the life of Griffin when they were not his creditors in any sum whatever, and that they had carried their fraudulent scheme to a successful termination in the collection of the money. This letter is as follows:

"In re Hays, Adm'r of Griffin, v. Equitable, etc. Messrs. Alexander & Colby, 120 Broadway, New York City.—Gentlemen: The writer has just returned from Louisa, Lawrence county, where two days were spent in forming the issues and arguing a motion that we had theretofore entered, to transfer the above case to equity. You will at once appreciate the importance of getting this case away from a jury. We succeeded in having our motion sustained, and the case will be tried in August, in equity—of course, without the intervention of a jury. A motion was made by the plaintiff to have an issue out of chancery, as to the question whether or not Howe and Johnson were creditors of Morris Griffin at any time, and, if so, to what extent. This motion was sustained by the court. The evident object of this move was, in the first place, to secure a verdict of a jury that Howe and Johnson were not creditors at all of Morris Griffin, and, in the second place, if an indebtedness were proven, to have it fixed so that, if it appeared that the indebtedness was less than the amount of insurance money they received, the administrator perchance might be able to recover the excess. Under our views of the law, if the jury should decide that Howe and Johnson were never creditors, to any extent, of Morris Griffin, that question would not affect the defense of the company. The company's defense is, as to this point, that Morris Griffin having stated in his two applications for the policies that Howe and Johnson were his creditors, and having requested in said applications that the policies, when issued, would be made payable directly to Howe and Johnson and to Johnson respectively, Morris Griffin and his privy in estate, the administrator, are now estopped to deny the relation-

ship of creditor and debtor between the parties. In passing, we will mention that the court stated from the bench that this position was well taken, and that if it appeared on final hearing that these statements and requests were made by Morris Griffin, his administrator could not now be heard to deny them. That is the legal attitude of the case at present. Before the legal issue as to indebtedness vel non was submitted to the jury, Mr. Stuart, of Hager & Stuart, and ourselves, filed an amended answer in which we set up that on the 26th day of April, 1899, Howe and Johnson, being residents of the state of Kentucky, filed their suit in the United States Circuit Court for the then District of West Virginia, against Morris Griffin, now deceased—he being then a citizen and resident of the state of Virginia—seeking to recover of him $20,000; that summons was duly issued and was upon the first day of May, 1899, executed upon Morris Griffin at Kenova, Wayne county, West Virginia, by B. L. Priddy, then acting as deputy United States marshal in and for the said district; that thereafter a judgment by default was rendered against Morris Griffin for $17,819.30; that said judgment had never been appealed from or modified or set aside; and that said judgment was still in force. To our surprise the plaintiff replied to that pleading by saying, in substance, that the party upon whom process was served in this suit was not Morris Griffin, but was some other person; that the Federal Circuit Court, therefore, never had jurisdiction of the person of Morris Griffin, etc., etc. Thereupon we sought an interview with Mr. Priddy, the former deputy marshal, who was present. He is an intelligent, capable young lawyer, and he frankly told us that Mr. Howe, of Howe & Johnson, handed to him

the summons in that case and pointed out to him a man as Mr. Morris Griffin, upon whom he requested the marshal to serve the summons; that person thus designated was approached by him and asked if his name was Morris Griffin; that he answered affirmatively; that thereupon he served the summons, and made the return in due form; that he has since ascertained and is now able to swear positively that the person upon whom he thus served the summons was no other than one of the plaintiffs, J. G. Johnson. Johnson was present in the town of Louisa at the time we had this conversation with Priddy. We then sought Mr. Johnson, who, while denying the statement made by Mr. Priddy, did it in such a manner as to satisfy Mr. Stuart and the writer that Priddy's statements were in every respect true. You will, of course, see at a glance the embarrassment of our position. It is now obvious that this insurance taken out on Griffin's life in favor of Howe and Johnson and J. G. Johnson, respectively, was a sham proceeding and fraudulent throughout. We interrogated Johnson as to how Morris Griffin was indebted to his firm and to himself. Without detailing his answers, we will say that they were so ridiculously improbable that we would not be willing to seriously offer them in evidence at a trial. Understand that we do not for a moment believe that the decision of this issue as to indebtedness vel non will affect the defenses of the company. Upon the ground of surprise at the last pleading of the plaintiff, the court very readily continued the legal issue until the next term of court. It is obvious that we will have to confess the allegations of the plaintiff in regard to this foreign judgment, and that we will further have to confess that there was no indebtedness. Howe, of Howe & John-

son, is now very ill with consumption, and will prob-
ably not be living at the next term of court. The im-
portant point to be established by us is that Morris
Griffin did sign the two applications for the policies
in controversy. The applications are attested, as
you will remember, by J. R. Logan, then agent of the
company; and the signature of Morris Griffin is at-
tested in one application by a man named Scholl, and
in the other application by a man named Boardman.
Both of these attesting witnesses, unfortunately, are
now dead. We will at once take depositions of
reputable citizens of Mt. Sterling to prove the gen-
uineness of the signatures of both Scholl and Board-
man. We have already taken one deposition proving
the genuineness of Boardman's signature. We are
advised by the attorneys of Howe and Johnson that
this proof can be made when we thus establish the
fact that these applications were, in fact, signed by
Morris Griffin, we will, in our judgment, and accord-
ing to the limitations of the court, have established
a complete estoppel against the plaintiff. We have
thus gone into details in order that you may thor-
oughly understand the situation. There is another
feature of this case that very seriously embarrasses
the writer. The original answer in this case was
prepared and sworn to by the writer, and in it, it was
distinctly alleged that the Equitable never at any
time issued any policy upon the life of Morris Grif-
fin in favor of anyone, except the two policies to
Howe and Johnson and J. G. Johnson. The writer
made affidavit that he believed these statements were
true. Your telegram of the 22d conveyed to us the
first intimation that there was in existence and full
force a $500 policy on the life of Morris Griffin, pay-
able to his then wife, and, in case of her death before

that of Morris Griffin, payable to Morris Griffin's estate. In view of the crookedness and the fraud that has now developed in this case on the part of Howe and Johnson, the allegations of the original answer, sworn to by the writer, might lead the court and opposing counsel to suspect that the company and its attorneys were attempting to foist upon the court a defense that was known by them to be untrue. The information as to this $500 policy, in justice to us, ought to have been communicated at the very outset of this proceeding. On yesterday, in order to right a wrong, we filed a pleading in which we set up this $500 policy and alleged that upon proof of death and upon presentation of the policy, the company was able, ready and willing to pay the amount of same to whomsoever it might now appear to be due. We ascertained from Mr. Stuart that he knew of this policy nearly, if not quite, a year since, but that he was requested by you to say nothing about it. We hope there will be no bad results either to the company or to ourselves, nor can we see how any such result should accrue. Yours truly, [Signed] Humphrey, Burnett & Humphrey.''

The Lawrence county litigation was terminated in the Lawrence circuit court in the fall of 190—, and the conclusions reached by Mr. Burnett, the society's attorney, as set out in his letter of April 26th, were in every particular verified, for it was demonstrated beyond question, and the court so held, that neither Howe and Johnson nor J. G. Johnson, individually was or ever had been a creditor of Griffin. This suit was instituted on July 25, 1907, This letter to the society was written on April 26, 1902, and the information therein set out was, of course, obtained prior to that date. If the information conveyed by this let-

ter to the society was sufficient to put it upon notice that a fraud had been practiced upon it, and that by reason thereof it had paid to Johnson money to which he was not entitled, then the statute of limitations began to run on that date, and, as the suit was not filed by the society until more than five years had passed, it must fail. It is argued for the society that, although its attorney received information which led him to believe that Johnson was not and never had been a creditor of Griffin, nevertheless, as Johnson was still claiming at that time to be a creditor, in spite of the information which to Judge Burnett seemed conclusive that he was not, that limitation in fact did not begin to run until it was judicially determined some months thereafter that Johnson was not a creditor; that the society was not bound by this belief on the part of Judge Burnett and did not, in fact, know that a fraud had been practiced upon it until the litigation in the Lawrence circuit court had terminated.

To this line of reasoning, however, we cannot subscribe. The statute provides that the limitation runs from the date of the discovery of the fraud or mistake, or from the date upon which, by the exercise of ordinary care, it could have been discovered. It is evident from the letter under consideration, that at the time it was written Judge Burnett understood the whole scheme which had been concocted by Johnson and Howe for the purpose of filching this money from the treasury of the company. His information was as full and complete at that time, and his knowledge that the fraud had been perpetrated and the money paid by mistake because thereof, as it was after the judgment had been rendered. The facts relative to this transaction, which were discovered by

Judge Burnett at that time after his conversation with the United States deputy marshal, and which he conveyed to the home office by this letter, were certainly such as would have at least put any reasonably prudent business man upon inquiry, if they were not sufficient to fully satisfy him that a fraud had been perpetrated, and yet we find no steps taken by the society to recover this money at all until five years and three months had passed. It is quite evident that the failure of the society to sooner set in motion the machinery of the law to recover this money was due to the mistaken belief on the part of those in charge of its affairs at the home office that the provision in the policies stating that they were incontestable upon any ground after they had been in force one full year, rather than to a lack of information upon its part that a fraud had been perpetrated upon it. It was this belief upon the part of its officers that induced them to pay little or no attention to the Tyler & Apperson letter and later induced them to disregard the notes of warning sounded by Griffin's administrator in 1900, shortly after this money had been paid. Upon no other reasonable hypothesis can the great delay here shown be accounted for. Under the facts presented, while reluctant to do so, we must hold that the plea of limitation is well taken, and the society, because it has rested so long upon its right, be denied the right to recover anything as against Johnson.

As to the claim against Howe, the plea of the ten-year statute of limitation must be held insufficient, upon the same ground and for the same reason above set out; and unless the fact that, because of the death of Howe, which occurred on December 26, 1903, the statute was extended for six months as to him,

because no suit could be brought against his admin-
istrator during the first six months after his appoint-
ment and qualification, the five-year statute must be
held good, for the suit against Howe's executor was
not brought until October 12, 1907, and the fraud be-
ing discovered on or before April 26, 1902, the five
years expired on April 26,1907, or more than five
months after the expiration of the five-year limit.

Counsel for the society most earnestly insists that
it is entitled to the benefit of the full five years and
six months, and cites and relies upon the case of
Southern Contract Co.'s Assignee v. Newhouse, 119
Ky. 704, 66 S. W. 730, 23 Ky. Law Rep. 2141, to sup-
port its contention; while counsel for Howe's ex-
ecutor, with equal zeal, contends that the only cases
in which the five-year limitation does not apply are
those especially excepted by section 2528, Ky. St.,
which is as follows: "If a person against whom any
action mentioned in the third article of this chapter
may be brought, died before the expiration of the
time limited for the commencement thereof, and the
cause of action survives, an action may be commenced
against his personal representative, devisee, or heirs,
or all, after the expiration of that time, and within
one year after the qualification of his personal repre-
sentative; and if there is no personal representative,
the action may be brought against his heirs or de-
visees, or both, after the expiration of the time limit-
ed for bringing the same, and within two years after
his death."

It is admitted that, by this statute, the death of
the debtor before the expiration of the five years may
extend the period within which suit may be brought
beyond the five-year limitation, provided the suit is
brought within one year after the qualification of the

administrator, and that, inasmuch as this was not done in the case at bar, section 2528 has no application, and appellant cites and relies upon the cases of C. & L. R. R. Co. v. Bowler's Heirs, 9 Bush, 468, and Jones v. Mitchell's Adm'r, 9 Ky. Law Rep. 858, where this statute was considered, and the court held that, in order to avail one's self of the extension of the period of limitation provided for in this section, the suit must be commenced within one year after the qualification of the personal representative. Counsel also relies upon the case of Dukes v. Davis, 125 Ky. 313, 101 S. W. 390, 30 Ky. Law Rep. 1348, as supporting, by analogy of reasoning his contention.

In order to arrive at a proper determination of this question, it becomes necessary to consider the various statutory provisions involved in the light of the exigencies that called for their enactment. Prior to the adoption of any statutes limiting the time within which actions might be brought, property rights had little or no value, and hardships were frequently imposed by the assertion and enforcement of spurious, old, and trumped up claims, alleged to have grown out of transactions long since closed and when the parties, by changed conditions, lapse of time, and death of witnesses, or other cause, were unable to present a defense, though they really possessed one. To remedy this evil the various statutes limiting the time within which an action might be brought were enacted. Actions were classified, and different periods of limitation fixed for the different classes. In its practical application it was found that the enforcement of the statutes occasionally worked a hardship, and, to avoid such a condition, certain remedial statutes were enacted, whereby a litigant would be relieved from the rigidity of the

rule and not left remediless where he was prevented
from enforcing his legal rights by some act or event
beyond his control and which he could neither foresee
nor prevent.  Of this character is section 2528, now
relied upon by appellee, and for such a purpose was
it enacted.  The case under consideration falls under
section 2515; so much of which as is pertinent being
as follows: "An action for relief on the ground of
fraud or mistake  *  *  *  shall be commenced with-
in five years next after the cause of action accrued."

The cause of action accrued April 26, 1902, and the
time within which the action might have been brought
expired April 26, 1907, unless the six months' time
within which no suit could have been brought against
the administrator is to be deducted from this period
and added to the end thereof, so as to extend the
period of limitation to October 26, 1907.   Section
3847, which provides that no suit shall be brought
against an administrator during the next six months
next after his qualification, does not confer the right
contended for.   The purpose of this section of the
statutes was to give the administrator a reasonable
time to settle the  claims  against  his  decedent's
estate without being harassed with lawsuits and put
to the cost and expense which litigation would neces-
sarily entail.   It does not deal with the subject of
limitation, and clearly was not intended to extend the
five-year period fixed by sec. 2515. The cause of action
having accrued, and the limitation having commenced
to run, it is not suspended by the death of the debtor
except by special statutory enactment.   25 Cyc. 1278.
The five-year period of limitation not having been ex-
tended for the society as a matter of right, nor
authorized by section 3847, appellee must look to sec-
tion 2528, above quoted, for the needed relief. The aid

of this statute being invoked, appellee must bring its
case within the requirements of the act. It cannot ac-
cept the extension of time which the statute affords
and refuse to commence its action within one year
after the qualification of the personal representative.
The burden goes with the benefit.  Howe died in
December, 1903.  His administrator was appointed
two days after his death, and allowing for the six
months within which no suit could be brought against
his administrator, the society had from the 28th of
June, 1904, to April 26, 1907, or nearly three years,
in which to bring its suit, and having thus slept upon
its rights and been guilty of laches almost inexcus-
able, it is in no condition to complain when it has dis-
covered that the Legislature has made no provision
whereby it may get an extension of time beyond that
fixed by section 2515 within which to assert its rights.
The society knew that Howe was dead, that his estate
was being settled up, and that the law favors a speedy
settlement of estates and penalizes creditors by re-
fusing to allow them interest on claims accruing after
the debtor's death when not presented within a rea-
sonable time after administration has been granted,
and this time is fixed by section 3884 at one year; still
no step was taken by the society to recover the money
out of which it knew it had been defrauded until the
five years had run.  The law favors the diligent, not
the slothful, and remedial statutes are not passed to
assist those who have under the general law ample
protection and full opportunity to assert their rights.
No case could be presented which would better illus-
trate this principle than that under consideration.
Upon no theory of equity or right can the society be
heard to demand additional time after it has idled

away two years and ten months, during any day of which it could have asserted its rights.

Nor is section 2528 susceptible of the construction which counsel for the society would place upon it. To give this statute such a construction would be to give no force or effect whatever to the words "and within one year after the qualification of his personal representative" therein, and it is elementary that, in interpreting or construing a statute, full force and effect must be given each and every part thereof where this can be done without destroying the sense. Applying this rule to the statute under consideration, no difficulty whatever is experienced. In fact, its language is so plain that its meaning is not open to question. It provides that, under the conditions named in the first part of the section, an action may be commenced against the personal representative, etc., of the deceased debtor after the time limit fixed by section 2515 and within one year after the qualification of his personal representative. That full force and effect was intended to be given the words "and within one year after the qualification of his personal representative" is shown by the addition of the clause where provision is made for the commencement of the action after the expiration of the time limit when there is no administrator appointed. In such case the action must be commenced within two years after the debtor's death. A clear conception of the meaning of the first clause of section 2528 is gained by applying the provisions of the second clause to the case under consideration. Suppose no administrator had been appointed for Howe, who died in December, 1903, could an action have been brought in 1907 on this claim after the expiration of the time limit fixed by section 2515? Clearly not, for

the reason that more than two years had passed since the death of Howe. It is apparent that the Legislature only intended section 2528 to apply to that class of cases where the debtor died and the administrator was appointed one year or less before the expiration of the time limit within which suit might be brought. And there is good reason for such a rule, for, conceding that the creditor may not proceed against the administrator during the first six months after his qualification he would still have six full months within which to sue. This is certainly a reasonable time, and it can hardly be seriously contended that, in enacting a remedial statute, the Legislature intended to give to the litigant more than a reasonable time within which to assert his right. Considering sections 2515, 2528, and 3847 together, we conclude that in all causes of action falling under section 2515, where the right of action accrues during the life of the debtor and the debtor dies and an administrator is appointed for his estate more than one year before the expiration of the time limit within which an action might be brought, section 2528 has no application and does not stop the running of the statute during the first six months after the administrator is appointed, for the evident reason that, as the creditor still has at least six months in which to sue before the expiration of the time limit, the necessity for the passage of any remedial statute or enabling act was wanting. On the other hand, if the debtor dies, and administration is granted on his estate less than one year before the expiration of the time limit within which the suit must be brought, section 2528 applies, provided the suit is commenced within one year after administration is granted. Where no administration

is granted, section 2528 applies in all cases where the death of the debtor occurs less than two years before the expiration of the time limit, provided suit is commenced within two years from the death of the debtor. And section 2528 does not apply in any state of case where the death of the debtor occurs more than two years before the expiration of the time limit.

The death of Howe having occurred more than two years before the expiration of the time limit, as fixed by section 2515, within which the suit might be brought, section 2528 has no application. In so holding we are not unmindful that this court, in Southern Contract Co.'s Assignee v. Newhouse, etc., 119 Ky. 704, 66 S. W. 730, 23 Ky. Law Rep. 2141, expressed a contrary view, and, following the rule announced in Field v. Wallace's Adm'r. 22 Ky. 333, and Caldwell v. Irvine's Adm'r. 27 Ky. 107, held that the death of the debtor before the expiration of the time limit within which suit might be brought had the effect of extending the period of limitation six months. The two latter cases were written under a different statute, and before the adoption of the present statute, requiring that the suit be brought within one year after the qualification of the administrator, or, if no administrator be appointed, then within two years after the death of the debtor. This fact seems to have been overlooked by the court in deciding the case of Southern Contract Co.'s Assignee v. Newhouse, for in that case no force or effect whatever was given to the phrase "and within one year after the qualification of his personal representative," and no reference was therein made to the case of Covington & Lexington Ry. Co. v. Bowler's Heirs, etc., 72 Ky. 468, in which the court used

the following significant. language: ''The death of
Bowler so far interrupted the running of the statute
as to authorize appellant to commence   its   action
against his heirs and representatives after the ex-
piration of five years from the accrual of its cause
of action, provided it instituted its suit within one
year after the qualification of his personal represen-
tative.   It did commence its suit within a year after
administration in this state, and its right to sue was
saved by the exception stated.''   Evidently in that
case, if it had been shown that the suit had not been
commenced within a year after administration was
granted, it would have been held not to have fallen
within the purview of section 2528.   Nor was any
reference made to the case of Jones v.   Mitchell's
Adm'r, 9 Ky. Law Rep. 858, decided by the superior
court, in which it was held that it is only where the
time within which an action may be brought expires
after the death of the debtor and before the expira-
tion of one year after the qualification of the ad-
ministrator, or, if there be no administrator, before
the expiration of two years after the death of the
debtor, that there is any. extension of the priod of
limitation by virtue of section 5, art. 4, c. 71, of the
General Statutes, which is section 2528 of the Ken-
tucky Statutes.

When it is remembered that remedial statutes and
enabling acts are passed to relieve unavoidable hard-
ships and to prevent the miscarriage of justice, we
have no difficulty in understanding why section 2528
was not intended to apply to a case like that under
consideration.   It could with equal propriety be said
that, in a case where the limitation was 15 years,
and the cause of action had accrued, and during the
first year thereafter the debtor died and an admin-

istrator was promptly appointed, the creditor might wait until the end of the 15 years and then claim 6 months' additional time within which to sue. The difference between the case at bar and such a case is merely in degree, not in principle. There being no necessity, in order to protect the creditor in his rights, to extend the period of limitation, the Legislature has not seen fit to do so, and as the creditor must look to the statute alone when he seeks to avoid the effect of the general law, he is in no position to complain if he is unable to bring his claim within the provisions of the enabling act.

On the whole case we are of opinion that section 2528, upon which appellee relies, has no application and can afford him no relief, and that, having discovered the fraud more than five years before the institution of its suit, its cause of action is barred, and the plea of the five-year statute of limitation should have been upheld by the trial court.

Judgment in each case is reversed, and the causes remanded, with instructions to enter judgment for the defendants.

O'REAR, J., not sitting.