173 P.2d 484

In re MATSON'S ESTATE.

MATSON v. MATSON.

No. 4941.

Supreme Court of New Mexico.

Oct. 5, 1946.

Dailey & Rogers and Jethro S. Vaught, Jr., all of Albuquerque, for appellant.

K. Gill Shaffer, Theo E. Jones, and Edwin L. Swope, all of Albuquerque, for appellee.

BRICE, Justice.

The question is whether a claim filed by Myrtle B. Matson with the administrator of the estate of Lauren C. Matson, deceased, was barred by the statute of limitation. The facts are substantially as follows:

On August 20, 1922, at Wichita, Kansas, Lauren C. Matson, a resident of that state, made, executed, and delivered for a cash consideration to Myrtle B. Matson the claimant, a promissory note for the sum of $7603.39, due one year after date, bearing interest at 7 per cent per annum from maturity until paid. There were credits at various dates between August 8, 1938, and November 8, 1941, aggregating $805.80, all except two of which were endorsed upon a paper attached to the note. In the year of 1931 Lauren C. Matson, still a resident of Kansas, visited New Mexico for one week. Thereafter, on May 1, 1936, he became a resident of New Mexico; and except seven days and a few hours spent outside the state he remained in New Mexico from May 1, 1936, until October 11, 1941, on which date he died.

Myrtle B. Matson has been the owner and holder of the note mentioned since its execution.

Grace L. Matson, the wife of Lauren C. Matson, made no application to be appointed administratrix of the estate of her husband after his death, until July 16, 1942 on which date she was appointed administra-

trix. Prior thereto, and on April 30, 1942, Myrtle B. Matson, the claimant, filed a petition in the district court of Bernalillo County praying to be appointed administratrix of the estate, but the district court on the same day appointed Augustus T. Seymour administrator. On May 4, 1942, Myrtle B. Matson filed proof of claim with the administrator. On July 6, 1942, Seymour resigned as such administrator and thereafter on July 16, 1942, Grace L. Matson was appointed administratrix of her husband's estate and she has been administratrix since that date.

The following statutes are material to a decision:

"The following suits or actions may be brought within the time hereinafter limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially provided." N.M.Sts.1941 Sec. 27-101.

"Those founded upon any bond, promissory note, bill of exchange or other contract in writing, or upon any judgment of any court not of record, within six years. * * *" N.M.Sts.1941 Sec. 27-103.

"If, at any time after the incurring of an indebtedness or liability or the accrual of a cause of action against him or the entry of judgment against him in this state, a debtor shall have been or shall be absent from or out of the state or concealed within the state, the time during which he may have been or may be out of or absent from the state or may have concealed or may conceal himself within the state shall not be included in computing any of the periods of limitation above provided." N. M.Sts.1941 Sec. 27-108.

"The times limited for the bringing of actions by the preceding provisions of this chapter shall, in favor of minors and persons insane or under any legal disability, be extended so that they shall have one [1] year from and after the termination of such disability within which to commence said actions." N.M.Sts.1941 Sec. 27-109.

"When the commencement of any action shall be stayed or prevented by injunction order or other lawful proceeding, the time such injunction order or proceeding shall continue in force shall not be counted in computing the period of limitation." N. M.Sts.1941 Sec. 27-111.

"The following persons are not qualified to act as executors or administrators: Nonresidents of this state; minors; judicial officers; persons of unsound mind, or who have been convicted of any felony, or of a misdemeanor involving moral turpitude." N.M.Sts.1941, Sec. 33-106.

"If the deceased person makes no will, the estate shall be administered by the surviving conjugal partner, if married, and in the absence of such person, by the nearest relative of the deceased, or other person having an interest in the distribution of the

property, be it an executor, legatee or creditor." N.M.Sts.1941 Sec. 33-109.

"If there should be no such person, or if such person should not take out letters of administration, within twenty [20] days after the death of the testator, or of having received notice thereof, the probate judge shall appoint a person of sufficient capacity to administer said estate wherever it may be situated." N.M.Sts.1941 Sec. 33-110.

The deceased came to New Mexico to make it his home on May 1, 1936. He died October 11, 1941, and an administrator of his estate was appointed April 30, 1942. The claim in question was filed with the administrator on May 4, 1942; which was six years and three days after he moved to New Mexico. But he had been in the state seven days in 1931, which, added to the above, would make six years and nine days in which no action had been taken on the note or claim. From these facts it appears that the note was barred by the six year statute of limitations, *if the trial court erred* in holding that there should be deducted from this time the twenty days after the death of the deceased in which his widow was given a preference right to administer the estate by Secs. 33-109 and 33-110, N.M.Sts.1941, of which right she did not avail herself. In re Goldworthy's Estate, 45 N.M. 406, 115 P.2d 627, 148 A.L. R. 722.

Section 33-109, supra, gives a preference right to the widow of the deceased to administer the estate. It is only "in the absence of such person" that "the nearest relative of the deceased, or other person having an interest in the distribution of property," has the twenty day preference right to apply for letters of administration. It may be that the legislature intended that if there was a surviving conjugal partner who refused to make application for letters of administration within the twenty days that one of the other persons named should have a preference over "a person of sufficient capacity to administer said estate" as provided by Sec. 33-110. supra. This seems to be our holding In re Miller's Estate, 39 N.M. 40, 38 P.2d 1116. We are of the opinion, however, that as there was a surviving conjugal partner of the deceased that she, and she alone, had twenty days within which to make application to be appointed administratrix of her husband's estate. Whether the court was without *jurisdiction* to appoint another until after the expiration of the twenty days, as held by some courts (Pikey v. Riles, 223 Mo.App. 921, 20 S.W.2d 550; In re Wilson's Estate, Mo.App., 16 S.W.2d 737; Haug v. Primeau, 98 Mich. 91, 57 N.W. 25); or whether the appointment of another within the twenty days was error only (Jones v. Bittinger, 110 Ind. 476, 11 N.E. 456), we need not decide. But in any event

the statute is mandatory; and a widow who is qualified cannot be arbitrarily deprived of her preferential right.

The widow failed to make an application for appointment until long after the expiration of the twenty days in which she had a preference right to administer her husband's estate, but during that twenty days the court was without authority to arbitrarily appoint another. There were then twenty days, within the six years and ten days that elapsed between the death of deceased and the filing of the claim, in which no action upon the claim could have been legally taken, although this situation did not prevent the filing of the claim within six years after the death of deceased. The claimant had several months after the expiration of the twenty days preference time in which she could have secured the appointment of an administrator, had she so elected.

Many states have statutes which toll the statutes of limitation until an administrator is appointed; others for a specific time after the death of deceased. Many of the authorities on the question have reference to these statutes. In our search we have noted that the following states have such statutes: North Carolina, Montana, Pennsylvania, New York, Oregon, Texas, Georgia, Washington, California, Kentucky, Mississippi, Alabama, Idaho, Massachusetts, Virginia, Illinois, Michigan, South Carolina, Nevada, and New Hampshire.

The trial court held, and the appellee asserts here, that the six year statute of limitation was tolled during the twenty days immediately following the death of the deceased in which the widow had a preferential right to apply for letters of administration. If this ruling is correct there remained eleven days for the statute to run at the time the claim was filed with the administrator.

The appellant contends that when the six year statute of limitations had started to run "it could be tolled only by a specific tolling statute," and New Mexico has none; that the claim had been barred by the six year statute nine days when filed.

Whether the trial court erred depends, therefore, upon whether the statute of limitations was tolled during the twenty day period in which the widow of deceased had the preferential right to administer upon her husband's estate.

It is a rule supported by the weight of authority that when statutes of limitation have begun to run, a disability to sue does not suspend the running of the statute, in the absence of a specific statute enacted for that purpose. Brooks v. Preston, 106 Md. 693, 68 A. 294; Johnson v. Wren, 3 Stew., Ala., 172; Copeland v. Collins, 122 N.C. 619, 30 S.E. 315; Succession of Linderman, 3 La.Ann. 714; Mitcheltree's Adm'r

v. Veach, 31 Pa. 455; Anderson v. Bedford, 44 Tenn. 464; Swift v. Trotti, 52 Tex. 498; Handy v. Smith, 30 W.Va. 195, 3 S.E. 604; Baker v. Brown, 18 Ill. 91; Johnson v. Equitable, etc., Society, 137 Ky. 437, 125 S.W. 1074; 34 A.J. "Limitations" Secs. 188, 189, 191; 37 C.J. "Limitations" Secs. 156, 443, 446.

The following texts state the general rule:

"Generally speaking statutes of limitation are not interrupted or tolled by reason of the death of a party to a cause of action unless special provision is made in such statutes for suspending or interrupting the statute. In suits upon claims of indebtedness incurred by the decedent, action must be brought within the time limited for bringing the action had the decedent lived, unless some special provision is made in the statute for suspending or tolling it." 21 A.J. "Executors & Administrators."

"Where a cause of action accrues after the death of the person against whom it lies, limitation does not begin to run until there is a grant of administration on his estate; but the general rule is that the death of one against whom a cause of action has already accrued does not suspend the running of limitations until administration on his estate is taken out, although there is some authority for the contrary view, * * *." 34 C.J.S., Executors' and Administrators, § 732, page 748. Also see:

Appeal of Keyser, 124 Pa. 80, 16 A. 577, 2 L.R.A. 159; McAuliff v. Parker, 10 Wash. 141, 38 P. 744.

The courts of a number of states have held, in the absence of a tolling statute, that the statutes of limitation are suspended on claims against the estates of decedents until the appointment of an administrator; or until the creditor by using diligence could secure such appointment. Rose v. Daniel, 3 Brev., S.C., 438; Brown v. Leavitt, 26 N.H. 493; Toby v. Allen, 3 Kan. 395; Burnet's Ex'rs v. Bryan's Adm'rs, 6 N.J.L. 377; Long v. Clegg, 94 N.C. 763; In re McCandless' Estate, 61 Pa. 9; Briggs v. Thomas' Estate, 32 Vt. 176; Stanton v. Gibbins, 103 Mo.App. 264, 77 S.W. 95.

It seems that the Supreme Courts of North Carolina and Oklahoma have decided the question both ways. See Long v. Clegg, supra; Copeland v. Collins, 122 N.C. 619, 30 S.E. 315; Shawnee Nat. Bank v. Marler, 106 Okl. 71, 233 P. 207; Robitaille v. Mumaugh, 167 Okl. 339, 29 P.2d 602; Griffin v. Hannan, 185 Okl. 433, 93 P.2d 1078.

The first case on the question decided in this country was Hopkirk v. Bell, 3 Cranch 454, 2 L.Ed. 497, in which it was held that the statutes of limitation of Virginia were suspended during the Revolutionary War; but the decision rested principally upon the terms of the treaty of

peace between the United States and Great Britain, in which it was provided that creditors of neither country should meet with any lawful impediment to the recovery of the full sum of debts due its citizens by the citizens of the other.

Following the Civil War the Supreme Court of the United States held in a number of cases that the statutes of limitation of the Confederate States were suspended as to causes of action against "Rebel debtors" owed to "loyal citizens" during the time that a suit could not be instituted because of war conditions. The principal cases are Hanger v. Abbott, 6 Wall. 532, 18 L.Ed. 939; United States v. Wiley, 11 Wall. 508, 20 L.Ed. 211, and Braun v. Sauerwein, 10 Wall. 218, 19 L.Ed. 895. In the Braun case the Supreme Court said:

"It is, undoubtedly, a general principle, that when a statute of limitation has begun to run, a disability to sue subsequently intervening does not stop its running, even though the disability be one of those expressly recognized, in the statute itself. * * * But in Hanger v. Abbott, 6 Wall. 532, 18 L.Ed. 939, it was ruled, after grave consideration, that the time during which the courts of the recently rebellious states were closed to the citizens of other states, is, in suits brought by such citizens, to be excluded from the computation of the time fixed by statutes of limitation, within which only suits may be brought, and this, though the statutes contain no such exemption. In other words, it was held that the statutes of limitations of the insurrectionary states were suspended, while the courts in those states were closed by the war. Similar decisions have been made in the state courts. They all rest on the ground that the creditor has been disabled to sue, by a superior power, without any default of his own and, therefore, that none of the reasons which induced the enactment of the statutes apply to his case; that unless the statutes cease to run during the continuance of the supervening disability, he is deprived of a portion of the time within which the law contemplated he might sue."

In United States v. Wiley, supra, the Court stated:

"Statutes of limitation are indeed statutes of repose. They are enacted upon the presumption that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue. Such reasonable time is, therefore, defined and allowed. But the basis of presumption is gone whenever the ability to resort to the courts has been taken away. In such a case the creditor has not the time within which to bring his suit that the statute contemplated he should have."

These war opinions construed the Federal statute of 1864 tolling the statutes of limitation of the Confederate states. 13 Stat. 123. It was upheld as a war meas-

ure; though the soundness of these opinions was questioned in Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819.

One of the earliest state cases in which an exception was added to the statute of limitation was Toby v. Allen, supra, decided in 1866. Without citing authority it was said in the opinion:

"It is true the death of the debtor operates to suspend the statute until an administrator is appointed because there must be a party to be sued."

The soundness of this case was questioned in Bauserman v. Charlott, 46 Kan. 480, 26 P. 1051, in which the court stated:

"It is not necessary at this time to reconsider any of the former decisions of this court, and therefore it is. not necessary now for us to comment on prior decisions referred to." (Among these decisions was the Toby case.)

The same question was before the court but the reason for the rule stated in the Toby case was not followed. It was held that only the time necessary to secure the appointment of an administrator by exercising diligence is given creditors.

In Timmonds v. Messner, 109 Kan. 518, 200 P. 270, 271, it was said:

"The death of the debtor does not suspend the operation of the statute longer than to give the creditor a reasonable time and opportunity to procure the appointment of an administrator of the deceased debtor's estate."

The case of Bauserman v. Blunt, 147 U.S. 647, 13 S.Ct. 466, 470, 37 L.Ed. 316, has been cited a number of times by courts as supporting the minority rule, but this is not correct. The Supreme Court was there construing a statute of the State of Kansas, and necessarily followed the Kansas court's construction of Kansas statutes. But the court stated, as though not in accord with the Kansas rule:

"In the absence of express statute or controlling adjudication to the contrary two general rules are well settled: (1) When the statute of limitations has once begun to run, its operation is not suspended by a subsequent disability to sue. * * * (2) The bar of the statute cannot be postponed by the failure of the creditor to avail himself of any means within his power to prosecute or to preserve his claim."

The Supreme Court cited McDonald v. Hovey, 110 U.S. 619, 4 S.Ct. 142, 28 L.Ed. 269, in support of the above, wherein it was held that when a statute of limitation begins to run, no subsequent disability will interrupt it.

It would unnecessarily lengthen this opinion to review the many cases cited by counsel. Each side of the question is supported by authority, and the Kansas cases fairly represent those supporting the trial court's conclusion.

Aside from the fact that the trial court followed the minority rule, this court in Buss v. Kemp Lumber Co., 23 N.M. 567, 170 P. 54, 57, L.R.A.1918C, 1015, has followed the majority rule, and we are not disposed to depart from it. The question there was whether the statute of limitation was tolled on a debt secured by a mortgage on real estate during the time mortgagee was in possession with the consent of the mortgagor.

This court stated that a number of cases held that the statute was suspended while a mortgagee so held possession; but declined to follow the rule, because the statute itself made no such exception. After stating certain contention of the appellee, we said:

"* * * But admitting all this, should we hold the mortgagee's possession, with the consent of the mortgagor, tolled the statute, notwithstanding that the statute itself makes no such exception? In 17 R.C.L. 'Limitations of Actions,' § 33, appears the following:

"'In the early years after their enactment, an inhospitable reception was accorded by the courts to the legislative policies embodied in statutes of limitations. Among other means of evading the letter of the law, the courts were in the habit of implying exceptions at every opportunity. The courts in later years, while not inclin-

ed to deny or question the authority of the precedents importing into the statute certain exceptions, are usually unwilling to continue the practice of adding other exceptions which might be deemed wise, but which the Legislature has not seen fit to make. The general principle recognized to-day for the construction of statutes of limitations is that unless some good ground can be found in the statute for restraining or enlarging the meaning of its general words, they must receive a general construction, and that the courts cannot arbitrarily subtract from or add thereto, and cannot create an exception where none exists, even when the exception would be an equitable one. * * *'

"At section 190 of the same work, it is said:

"'As a general rule the courts are without power to read into these statutes exceptions which have not been embodied therein, however reasonable they may seem. It is not for judicial tribunals to extend the law to all cases coming within the reason of it, so long as they are not within the letter. * * *'

"The doctrine is supported by numerous cases. In Bank of the State of Alabama v. Dalton, 9 How. 522, 529, 13 L.Ed. 242, the court said:

"'The Legislature having made no exception, the courts of justice can make

none, as this would be legislating. In the language of this court in the case of McIver v. Ragan, 2 Wheat 25, 29, 4 L.Ed. 175. "Wherever the situation of the party was such as, in the opinion of the Legislature, to furnish a motive for excepting him from the operation of the law, the Legislature has made the exception, and it would be going far for this court to add to those exceptions." The rule is established beyond controversy. * * *'

"In Butler v. Craig, 27 Miss. 628, 61 Am.Dec. 527, it was held that:

" 'No equitable exceptions are to be ingrafted upon the statutes of limitation, and that where there is not express exception, the court cannot create one.'

"In Tynan v. Walker, 35 Cal. 634, 95 Am.Dec. 152, it was contended by one party that the fact that no person was in existence competent to sue did not prevent the operation of the statute of limitations. The court said:

" 'We have thus glanced at the condition of the law for the purpose of showing that the rule which the plaintiff has invoked has its foundation in judicial construction, and not in the language or general purpose and design of the statute, and that it is opposed to all the well-established rules by which courts should be guided in ascertaining and giving effect to the will of the Legislature, and for the further purpose of justifying ourselves, if any justification be required, in adopting the same rule of construction in relation of the statute of limitations which we uniformly apply to all other statutes— that is to say, to read it as it is written, without any arbitrary subtraction or addition to its meaning. The violation of this rule, as we consider, which we have noticed, can be accounted for only by referring it to the well known hostility of the courts, at an early day, to statutes of limitations. That hostility no longer exists, and with it, in our judgment, its effects also should be allowed to pass away.'

"As the statute itself creates no exception to the running of the statute in favor of a mortgagee in possession none exists."

■ The trial court erred in holding that the statute of limitation was suspended during the twenty days in which the deceased's widow had the preferential right of administration.

■■ The last question is whether the statute of non-claim was substituted for the statute of limitation upon the death of deceased. There is authority so holding (In re Estate of Anderson, 200 Minn. 470, 274 N.W. 621, 112 A.L.R. 287), but the weight of authority is against it. The general rule is stated in Woerner's American Law of Administration as follows:

"The Statute of Non-claim, or Special Limitation, is not to be construed together

with, or as attached to, the general Statute of Limitations, but independently. Hence generally, either of the statutes, if it has run its course, although the other has not, may be relied on as a bar. But it is otherwise in some states, for instance, in Arkansas, California, Connecticut, Florida, Illinois, Indiana, Kentucky, Massachusetts, New Hampshire, New York, and North Carolina, where it is enacted by statute or held, that if the general Statute of Limitations has not run its course at the time of the debtor's death, the creditor may bring his action at any time within a certain period from the grant of letters, or after the debtor's death, or (as in Arkansas) at any time within the period covered by the Statute of Non-claim, although the general statute may meanwhile have completed its course." Woerner's L.Adm., 3d Ed., Sec. 400.

See cases cited to this text and annotation in 112 A.L.R. 287.

The judgment appealed from is reversed and cause remanded with instructions to the district court to set aside its judgment and enter judgment for appellant.

It is so ordered.

SADLER, C. J., and LUJAN and HUD-SPETH, JJ., concur.

BICKLEY, J., did not participate in this decision.